UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-08208-SRM-PD | Date | September 11, 2025 |
|---|---|---|---|
| Title | M.T.M. v. Andrews, et al. | | |

PRESENT: **HONORABLE MICHELLE WILLIAMS COURT, UNITED STATES DISTRICT JUDGE**

| Gabriela Garcia | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PETITIONER:   ATTORNEY PRESENT FOR RESPONDENTS:

None Present                                              None Present

**PROCEEDINGS:** (IN CHAMBERS) ORDER GRANTING PETITIONER'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER [2]

Before the Court is Petitioner's Emergency Motion for a Temporary Restraining Order ("TRO") pending adjudication of the Petition for Writ of Habeas Corpus ("TRO Application"). Dkt. 2. The Court read and considered the moving, opposing, and reply papers, and heard argument from counsel at a hearing on the motion held by Zoom on September 9, 2025. For the reasons stated herein, the Court **GRANTS** the TRO Application.

I.     BACKGROUND

On August 29, 2025, at approximately 8:23 p.m., this action was transferred to this Court from the Eastern District of California, Case No. 1:25-cv-01094-JLT-SKO. *See* Dkts. 15, 16.

On August 28, 2025, Petitioner M.T.M. ("Petitioner" or "M.T.M.") filed a Petition for Writ of Habeas Corpus against Tonya Andrews, Facility Administrator of Golden State Annex Detention Facility ("GSA"); Moises Becerra, Acting Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations, San Francisco ("ICE"), Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pam Bondi, Attorney General of the United States (collectively, "Respondents" or "the government"). Dkt. 1. (Pet.). On this same date, Petitioner filed the instant TRO Application (Appl.). *See* Dkts. 2, 28.

The Petition and TRO Application allege the following: M.T.M. is a 32-year-old citizen and national of Senegal who has been in detention for over 18 months in the custody of DHS, ICE, at GSA

in McFarland, California. Pet. at 7; Appl. at 7. On February 11, 2025, an immigration judge (IJ) granted M.T.M. Withholding of Removal to Senegal under § 241(b)(3) of the Immigration and Nationality Act (INA) because M.T.M. would likely be tortured and/or persecuted if deported there on the basis of a protected status related to sexual orientation. Pet. at 32, 41-63; Appl. at 7. Sometime after his Withholding of Removal Order became final, ICE informed M.T.M. it would seek his removal to Benin, El Salvador, or Morocco. Pet. at 7, 31-32; Appl. at 7. M.T.M. is not a citizen of and has no connection to these countries. Pet. at 41-63; Appl. at 7.

On August 26, 2025, M.T.M.'s counsel submitted a request to ICE for M.T.M.'s immediate release from ICE custody in accordance with the Immigration and Nationality Act ("INA") § 241(a)(3) and/or on parole under INA § 212(d)(5) and DHS Secretary Mayorkas's Memorandum, "Guidelines for the Enforcement of Civil Immigration Law." Pet. at 7, 35-39; Appl. at 7. M.T.M.'s counsel asked that ICE allow M.T.M. his statutory and constitutional opportunity to explain to an IJ why his life or freedom would be threatened by removal to a specific third country. Pet. at 7, 31-32; Appl. at 7-8.

On August 27, 2025, Respondents removed M.T.M. from GSA without explaining to him where they would take him and without providing any notice whatsoever to his counsel. Pet. at 7-8; Appl. at 8. Later on the night of August 27, 2025, M.T.M.'s counsel learned from M.T.M. that Respondents asked him to sign a document consenting to deportation to Ghana. Pet. at 8; Appl. at 8. M.T.M. refused on the basis of a fear-based claim for removal to Ghana. Pet. at 8; Appl. at 8. Petitioner claims that Respondents refused to take no for an answer and seemingly refused to acknowledge his assertion of a fear-based claim. Pet. at 8; Appl. at 8. M.T.M. asserts he also repeatedly asked for an opportunity to speak with his counsel, but Respondents refused each time. Pet. at 8; Appl. at 8.

On August 29, 2025, at approximately 8:23 p.m. PDT, this action was transferred to this Court from the Eastern District of California, Case No., 1:25-cv-01094-JLT-SKO. *See* Dkts. 15, 16. On August 30, 2025, at 12:11 p.m., the Court issued an order regarding Petitioner's Emergency Motion for Temporary Restraining Order, in which it ordered Respondents to, among other actions, inform the Court of Petitioner's location, and if no longer in this District, to provide documentation of Petitioner's location. Dkt. 19. In addition, the Court ordered that Petitioner was not to be removed from the United States nor transferred out of this District unless and until the Court ordered otherwise. *Id.*

On August 31, 2025, Respondents filed a timely Notice Regarding Petitioner's Location, in which Respondents stated that as of August 30, 2025, Petitioner was detained at the Alexandria Staging Facility in Alexandria, Louisiana. Dkt. 20. In light of the Notice, on September 1, 2025 the Court ordered the Parties to appear for a hearing September 2, 2025 at 2 p.m. on Zoom regarding Petitioner's Location, at which the Court heard argument of counsel and made certain findings and oral rulings. *See* Dkts. 21, 25. Discrepancies exist as to Petitioner's timeline from the time of the filing of the Petition and Emergency Motion and Respondents' transport of Petitioner. *See* Dkts. 9, 10, 11, 13, 20.

After hearing argument of counsel and reviewing the record before it and relevant laws and rules, the Court: (1) deemed the Petition and emergency motion for TRO as having been filed at 12:58 p.m. PDT on August 28, 2025; and (2) determined that the information available and as presented to the Court supports that Petitioner was located, or rather confined, in Victorville, California, in the Central District of California, at the time of the filing of Petitioner's Habeas Petition and Motion for Temporary Restraining Order. *See* Dkt. 28.

2

The Court then ordered Respondents to not remove Petitioner from the United States and to return Petitioner to a detention facility in the Central District or Eastern District of California no later than 12:00 p.m. noon Pacific Time Thursday, September 4, 2025, and that Respondents not thereafter remove Petitioner from the Central District of California and to produce Petitioner to appear for the hearing scheduled before this Court on Friday, September 5, 2025 at 1:00 p.m. on Zoom, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which empowers federal courts "to issue all writs necessary or appropriate in aid of their respective jurisdictions." *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (internal quotation marks and citations omitted). *See* Dkt. 28.

On September 4, 2025, the Court vacated the TRO Application hearing and ordered Respondents to file a declaration regarding Petitioner's location no later than 3 p.m. September 5, 2025. Dkt. 29. On September 5, 2025, the Court reset the hearing on the TRO Application for September 9, 2025 by Zoom. Dkt. 32. On this same date, Respondents filed a declaration of the deportation officer that as of 2:30 a.m. September 5, 2025, Petitioner was rebooked into the GSA in McFarland, California. Dkt. 31.

Petitioner's TRO Application seeks a court order restraining Respondents from removing him to a third country without any meaningful opportunity to assert a fear-based claim for withholding of removal. Dkt. 2 at 7. More specifically, Petitioner requests the Court enjoin Respondents from removing M.T.M. from this District or, at least, removing M.T.M. via a third-country deportation without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim: (1) a minimum of ten (10) days to raise a fear-based claim for protection prior to removal; (2) if M.T.M. demonstrates reasonable fear of removal to the third country, Respondents must move to reopen M.T.M.'s removal proceedings; (3) if M.T.M. is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for M.T.M. to seek reopening of his immigration proceedings. *See id.* at 24. On September 3, 2025, Respondents filed their Opposition to the TRO Application. Dkt. 26. On September 4, 2025, Petitioner filed a Reply in support of the TRO Application. Dkt. 27.

## II.     LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *See Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve a "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). Mainly, this standard ensures that the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may

be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132 (internal quotation marks omitted).

### III. DISCUSSION

#### A. *Winter* Factors

Upon consideration, the Court finds that, on balance, the Winter factors weigh in favor of granting the TRO Application.

##### 1. *Likelihood of Success on the Merits*

Of the factors, the "[l]ikelihood of success on the merits is the most important factor." *See California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted). "This is especially true for constitutional claims." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner asserts Respondents seek his imminent removal to a third country without a meaningful opportunity to be heard on a potential fear-based claim in violation of his rights under the INA, related regulations, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Pet. at 2, 9; Appl. at 8-9, 18-21.

Decisions from the Ninth Circuit spanning decades are indicative of Petitioner's likelihood of success on the merits. *See, e.g.*, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). As the court in *Andriasian* held, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *See id.* (determining that a "last minute" designation of an alternative country without a meaningful opportunity to apply for protection "violate[s] a basic tenet of constitutional due process"); *see also Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (unpublished) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country."). Other district courts in this Circuit have similarly enjoined the government from circumventing INS regulations and due process protections. *See, e.g.*, *Vaskanyan v. Janecka*, No. 5:25-cv-01475-MRA-AS, 2025 WL 2014208, at *6 (C.D. Cal. June 25, 2025) (finding instructive another district courts' holding that "third-country removals are subject to the same mandatory protections that exist in removal or withholding-only proceedings"); *see also Phan v. Beccerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1993735, at *7 (E.D. Cal. July 16, 2025) (granting TRO and preliminary injunction enjoining and restraining respondents from removing petitioner "to a third country without notice and an opportunity to be heard").

As regards Due Process protections, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (internal quotation marks and citation omitted). "Procedural due process rules are meant to protect" against "the mistaken or unjustified deprivation of life, liberty, or property." *A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Indeed, the Supreme Court has "long held that no person shall be removed from the United States without opportunity, at some time, to be heard." *Id.* (internal quotation marks and citation omitted). Notice satisfies Due Process when it is "reasonably calculated, under all the circumstances, to apprise interested

4

parties" and that "afford[s] a reasonable time . . . to make [an] appearance." *Id.* at 1367-68 (citation omitted) (stating, "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster").

Correspondingly, individuals who "face persecution or other mistreatment in the country designated" as their place of removal have various remedies through statute, regulation, and international law. *See Jama v. ICE*, 543 U.S. 335, 348 (2005); *see also Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., concurring) (explaining that the Government has an "obligation to provide [the plaintiff who was subject to an order of removal] . . . notice and an opportunity to be heard" and ensure compliance with its "obligations under [CAT]" prior to removal).

More specifically, three of the main forms of relief available for non-citizens in immigration removal proceedings based on a fear of returning to their home country are: asylum, withholding of removal, and protection under the Convention Against Torture (CAT). *See, e.g.*, *Orozco-Lopez v. Garland*, 11 F.4th 764, 770 (9th Cir. 2021) ("Congress sought to effectuate the United States' obligations under CAT by declaring it to be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." (internal quotation marks omitted)). When an IJ grants a non-citizen withholding or CAT relief, the IJ issues a removal order and simultaneously withholds or defers that order with respect to the country or countries for which the non-citizen demonstrated a sufficient risk of persecution or torture. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021). A recent putative nationwide class challenged this government practice in *D.V.D. v. DHS*, in which noncitizens with removal orders obtained a temporary restraining order and preliminary injunction preventing third country removals without written notice in a language that is understood and a meaningful opportunity to seek CAT protection. *See D.V.D. v. DHS*, 778 F. Supp. 3d 355, 392-93 (D. Mass. Apr. 18, 2025).

On July 9, 2025, Todd Lyons, the Acting Director for ICE issued a policy memorandum to all ICE employees following the *DHS v. D.V.D.*, 145 S. Ct. 2153 (U.S. June 23, 2025), Supreme Court's Order granting the government's application to stay the preliminary injunction in *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 392-93 (D. Mass. Apr. 18, 2025). *See* Pet. at 35 (July 9, 2025 Third Country Removals Memo). This memorandum explains that *D.V.D. v. DHS* "required certain procedures related to providing a 'meaningful opportunity' to assert claims for protection under the Convention Against Torture (CAT) before initiating removal to a third country. Accordingly, all previous guidance implementing the district court's preliminary injunction related the third country removals issued in *D.V.D.* is hereby rescinded." *Id.* Instead, the memorandum directs that "[e]ffective immediately, when seeking to remove an alien with a final order of removal . . . ICE must adhere to Secretary of Homeland Security Kristi Noem's March 30, 2025 memorandum, Guidance Regarding Third Country Removals, as detailed below," which states in part that "[i]f the United States has received diplomatic assurances from the country of removal that aliens removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the alien may be removed without the need for further procedures." *Id.* at 35-39. In all other cases, the memorandum mandates ICE to comply with procedures including "not affirmatively ask[in] whether the alien is afraid of being removed to the country of removal" and "generally wait[ing] at least 24 hours following service of the Notice of Removal before effectuating removal." *Id.* at 35. However, "[i]n exigent circumstances,"

5

they "may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal" and a "determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal" is to be approved by the DHS General Counsel or Principal Legal Advisor. *Id.* And when a non-citizen affirmatively states a fear of removal to a country listed on the Notice of Removal, they are to refer the case to the U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility protection under CAT within 24 hours of referral. *Id.* at 35-36. That is, unless USCIS determines the non-citizen has not met the standard that the non-citizen "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the non-citizen "will be removed." *Id.*

Relevant here, M.T.M. is a Senegalese citizen, and is not a citizen of any other country and has no known ties to any other country. *See* Pet. at 16-17, 41-64. The Petition alleges that M.T.M. has "suffered repeated persecution and torture in Senegal on the basis of his protected status in connection with sexual orientation" and attests that he left Senegal "out of fear for his life." *See id.* M.T.M. came to the United States through the southern border while President Biden's Circumvention of Lawful Pathways rule was in effect from May 2023 to May 2025, presumptively disqualifying him from asylum. *Id.*; *see* 8 C.F.R. § 208.33(a) (2025); Circumvention of Lawful Pathways, 88 Fed. Reg. 31314 (May 16, 2023). Promptly upon entry into the United States, M.T.M. was brought into custody and has been in detention since. Pet. at 17.

On April 17, 2024, DHS served M.T.M. with a Notice to Appear (NTA), charging him as removable under two provisions section 212(a) of the of the Immigration and Nationality Act for being present in the United States without being admitted or paroled and without certain documents. *Id.* at 17, 65. M.T.M. was brought to GSA, where he had been detained until August 27, 2025. *Id.* at 17. On February 11, 2025, an IJ granted M.T.M. withholding of removal to Senegal under § 241(b)(3) of the INA because M.T.M. would likely be tortured and/or persecuted if deported there based on a protected status related to sexual orientation. *Id.* M.T.M. was ordered removed to, and his removal withheld from, Senegal. *Id.* On March 11, 2025, M.T.M.'s withholding of removal order became final as the appeal period expired. *Id.* See 8 U.S.C § 1231(a)(l)(B)(i); 8 C.F.R. § 1241.l(c). Sometime after his Withholding of Removal Order became final, M.T.M. was informed by ICE that it would attempt to remove him to a third country. *Id.* at 18. The Petitioner alleges that ICE told M.T.M. it would seek his removal to Benin, El Salvador, or Morocco. *Id.* M.T.M. is not a citizen of and has no connection to any of those countries. *Id.*

On August 26, 2025, M.T.M.'s counsel submitted a request to ICE for immediate release from ICE custody in accordance with INA § 241(a)(3) and/or on parole under INA § 212(d)(5) and a 2021 DHS Policy Memorandum. *Id.* That request explained that M.T.M. is not a flight risk and is committed to complying with any order of supervision. *Id.* In addition, the request asserts that M.T.M.'s friend is his sponsor, a U.S. citizen, and a resident of New York. *Id.* M.T.M.'s friend also declared that he would be willing to provide for and support M.T.M. comprehensively as M.T.M. acclimates to life in the United States if released. *Id.* M.T.M. claims he has no criminal record in the United States nor his country of origin and has never had any dealings with drugs, firearms, or violence. *Id.*

On this same date, Petitioner claims Respondents told M.T.M. that he was to imminently report for transfer of some type, without providing any further details. *Id.* 18-19. The Petition states that

M.T.M.'s counsel did not receive any notice nor a response to the release request. *Id.* at 19. Later on August 27, 2025, M.T.M.'s counsel learned from M.T.M. that Respondents demanded he sign travel documents consenting to removal to Ghana. *Id.* The Petition alleges that M.T.M. then affirmatively asserted a fear-based claim and demanded to speak to his counsel. *Id.* Respondents are alleged to have refused to acknowledge M.T.M.'s fear-based claim and also denied his requests to speak to counsel. *Id.* Respondents took such actions, according to the Petition, despite being on notice of M.T.M.'s fear-based claims, in writing. *Id.* at 18.

The Court finds that Petitioner has demonstrated a likelihood of success on the merits as to his statutory, regulatory, and due process protection claims in connection with imminent removal to a third country without a meaningful opportunity to assert a fear-based claim for withholding of removal. Of note, M.T.M. withdrew his habeas request for permanent enjoinment of transfer from the District. *See* Dkt. 27. The Court is not persuaded by Respondents argument that neither complaints regarding conditions of confinement nor a desire to avoid removal to a country where one fears persecution are cognizable habeas claims, relying on *Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023) and *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), respectively. Dkt. 26 at 2, 5. In general, *Pinson* involved a habeas challenge to conditions of confinement brought by prisoners who had been convicted of crimes, while *Thuraissigiam* concerned the expedited removal process. *See Pinson*, 69 F.4th at 1065; *Thuraissigiam*, 591 U.S. at 109, 140.

Rather, instructive here is a more recent U.S. Supreme Court decision stating, "release [is not] the only remedy under the federal writ of habeas corpus." *See Trump v. J.G.G.*, 604 U.S. 670, 145 S. Ct. 1003, 1005-06 (2025) (quoting *Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). Moreover, the *J.G.G.* decision provides that "[r]egardless of whether the detainees formally request release from confinement," due process challenges in the context of removal proceedings relating to "entitle[ment] to notice and opportunity to be heard" "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *See id.* And the confluence of decisions in this area following the *Pinson* decision suggests an ever-evolving environment in the detainee stream of justice. *See, e.g.*, *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (reviewing non-citizen detainee's writ of habeas corpus pursuant to 28 U.S.C. § 2241 contesting detention and requesting release unless respondents scheduled a hearing before an immigration judge and concluding, "[n]either *Pinson* nor *Nettles* [*v. Grounds*, 830 F.3d 922 (9th Cir. 2016)] suggest that Doe's petition is a non-core habeas petition under [*Rumsfeld v.*] *Padilla*[, 542 U.S. 426 (2004)]. To the contrary, the text of Doe's petition indicates that his petition pursues habeas relief and is an attack on his present physical confinement at GSA, not a future restraint on his freedom. Accordingly, Doe's petition falls within *Pinson*'s "core of habeas" (as a cognizable habeas petition) and is also a core habeas petition under *Padilla* (as challenging his present physical confinement).").

Notwithstanding, Petitioner contends that M.T.M.'s claims implicate release in that M.T.M. is in post-removal detention pursuant to 8 U.S.C. § 1231 and will have a *Zadvydas v. Davis*, 533 U.S. 678 (2001), habeas release claim ripen the following week, and that proper notice and an opportunity to be heard will be central to his forthcoming *Zadvydas* habeas claim. *See* Dkt. 27 at 6. Based on the above, and upon consideration, including Respondents' actions, policy guidance, and the filings before the Court, this factor weighs in favor of granting the TRO Application.

   **2.    *Irreparable Harm***

Petitioner contends that Respondents "appear likely to imminently remove M.T.M. to a third country without providing M.T.M. mandatory statutory and constitutional protections." Appl. at 21. As discussed above, Petitioner points to the DHS's July 9, 2025 Third Country Removal policy memorandum, which states its standard procedure as the removal of non-citizens to third countries in as few as 24 hours without apparent due process protections. *See id.* Respondents assert that Petitioner has not demonstrated he will suffer irreparable injury if transferred to another district while detained. Dkt. 26 at 7-8. In addition, Respondents argue that Petitioner's TRO Application as regards his removal to a third country "without an elaborate notice and objection procedure" fails as it is "speculative" in that Petitioner assumes he would be removed to a third country without any notice and opportunity to be heard. *Id.* at 9.

As discussed above, Petitioner withdrew his habeas request for permanent enjoinment of transfer from the District and the Court's issuance pursuant to its authority under the All Writs Act ordered Respondents to not remove Petitioner from the United States and to not transfer Petitioner out of this District unless and until the Court ordered otherwise. *See* Dkts. 19, 27. Because of the timeline in which the events occurred from when this action initiated and then transferred to this Court, and Respondents' transfer of Petitioner during an approximate a three-day period between three locations and having receiving notice from Respondents that Petitioner, despite the Court's order had transferred him to Alexandria, Louisiana, the Court ordered his return to a detention facility in the Central or Eastern District of California and to produce Petitioner to appear for a hearing before the Court. *See, e.g.*, Dkts. 19, 20, 28.

In particular, as alleged on August 27, 2025, Respondents removed M.T.M. from GSA without explaining to him where they would take him and without providing any notice to his counsel. Pet. at 7-8; Appl. at 8. Later on the night of August 27, 2025, M.T.M.'s counsel learned from M.T.M. that Respondents asked him to sign a document consenting to deportation to Ghana. Pet. at 8; Appl. at 8. M.T.M. refused on the basis of a fear-based claim for removal to Ghana. Pet. at 8; Appl. at 8. Petitioner claims that Respondents refused to take no for an answer and seemingly refused to acknowledge his assertion of a fear-based claim. Pet. at 8; Appl. at 8. M.T.M. asserts he also repeatedly asked for an opportunity to speak with his counsel, but Respondents refused each time. Pet. at 8; Appl. at 8.

In addition, M.T.M. has requested release for urgent humanitarian reasons pursuant to INA § 212(d)(5) because of "serious mental and physical health conditions" relating, in part, to the persecution and torture he endured in Senegal. Pet. at 18. Examples given include that "he has thoughts of death and suicide, which he has spoken to the detention facility officials about." *Id.* In support, M.T.M. provides that a licensed social worker found that M.T.M's psychological symptoms are "highly consistent with symptoms of Post-Traumatic Stress Disorder and Major Depressive Disorder." *Id.* (Social Worker's Psychological Evaluation). M.T.M. also claims that since arriving in detention, M.T.M. has experienced increasing digestive eyesight issues—which have not been sufficiently treated at GSA. *Id.*

In support, Petitioner provides the Department of State's Country Reports on Human Rights Practices for various countries, and as relevant, in a recent report on Ghana, stated it is plagued by

> significant human rights issues including credible reports of cruel, inhuman, or degrading treatment or punishment by the government or on behalf of the government; arbitrary arrest or detention; serious restrictions

8

> on freedom of expression and media freedom, including violence . . . refoulement of refugees to a country where they would face torture or persecution; serious government corruption . . . laws criminalizing consensual same-sex sexual conduct between adults, although not fully enforced; crimes involving violence or threats of violence targeting lesbian, gay, bisexual, transgender, queer, or intersex persons.

*Id.* at 16-17, 69-102 (Ghana 2023 Human Rights Report). As relevant here, compared to the well-founded fear standard for asylum, M.T.M.'s request is assessed pursuant to the "clear probability" standard required for withholding of removal. *See Navas v. INS*, 217 F.3d 646, 663 (9th Cir. 2000) (comparing asylum and withholding of removal standards). To be granted withholding of removal under the INA, a non-citizen must objectively establish that it is "more likely than not" that the applicant's race, religion, nationality, membership in a particular social group, or political opinion would be "a reason" his or her "life or freedom would be threatened" in the future. *See* INA § 241(b)(3)(A); *Barajas-Romero v. Lynch*, 846 F.3d 351, 358-60 (9th Cir. 2017).

In response to the government's "speculative" argument, Petitioner contends that M.T.M.'s third country removal notice and opportunity to be heard requests for relief are not "prospective" because DHS's undisputed third country removal policy violates the INA and Due Process Clause and Respondents literally already attempted to remove M.T.M. to Ghana without notice and an opportunity to be heard. *See* Dkt. 27 at 8-11. Petitioner further contends that even had the government provided notice or an opportunity to be heard on a fear-based claim prior to removal to a third country, he requires a declaratory judgment to clarify his rights and reasonable expectations as to how Respondents may effectuate such removal, citing *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1094 (C.D. Cal. June 11, 2020). *Id.* at 8. Petitioner also asserts that courts in this Circuit and others have increasingly mirrored M.T.M.'s requested procedures, as seen in the *Vaskanyan* decision. *Id.* at 8-9. In response, the government argues that a removal order cannot be blocked by a TRO, citing 8 U.S.C. § 1252(g). Dkt. 26 at 10. Petitioner claims that 8 U.S.C. § 1252(g) does not and cannot bar M.T.M.'s claims because he does not challenge Respondents' discretionary decisions concerning the deportation process. Dkt. 27 at 9-11. Instead, Petitioner argues, it is not within the government's lawful discretion to use a removal order for one country to remove him to another. *Id.* at 10.

Section 1252(g) bars district courts from hearing claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." *See* 8 U.S.C. § 1252(g). However, the Supreme Court has interpreted this provision narrowly, limiting it to "only three discrete actions:" the "'decision or action' to commence proceedings, adjudicate cases, or execute removal orders.'" *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Other courts have rejected similar arguments by the government in determining it has a "non-discretionary duty to withhold removal under [CAT], if the applicant demonstrates eligibility, therefore, the court 'has jurisdiction to hear' the question of what Constitutional and statutory right individuals have to seek withholding of removal from a third country." *See J.R. v. Bostock*, No. 2:25-cv-01161-JNW, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025)). Here, Petitioner claims the government has failed to provide due process to seek withholding of

9

removal from a third country, and therefore, Section 1252(g) would not strip the Court of issuing such injunctive relief.

Based on what has been presented to the Court, it appears likely Respondents are preparing to remove M.T.M. to a third country—apparently Ghana—without providing a meaningful opportunity to be heard on his fear-based claims. While M.T.M. does not speak English and based on counsel's declaration, it is unclear as to whether Respondents initially informed M.T.M. in an accessible manner regarding the transfer, it does seem evident M.T.M. was informed and understood from Respondents he would be sent to Ghana and was prevented from speaking to counsel while and during the transfers prior to this Court's order. In addition, it appears the third countries would likely repatriate him to Senegal where he would face torture and/or persecution, in violation of U.S. and international refugee laws. *See id.* at 18-19, 69-102, 104-07 (Ghana 2023 Human Rights Report; John Eligon & Hamed Aleaziz, *African Nation Says It Will Repatriate Migrants Deported by U.S.*, N.Y. Times, July 16, 2025).

Petitioner has made a threshold showing that he is likely to be imminently removed to a third country without sufficient opportunity to apply for fear-based protection. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (stating it "is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). Moreover, that Respondents have already attempted to remove Petitioner to a third country without affording him adequate notice and opportunity to be heard persuades the Court of the evident irreparable harm. Thus, this factor weighs in favor of granting the TRO Application.

### 3. *Balance of Equities and Public Interest*

When the government is the opposing party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner contends the balance of equities and public interest strongly favor granting M.T.M.'s requested relief. Dkt. 2 at 22. In contrast, Respondents argue the public interest in enforcement of the United State's immigration laws is significant. Dkt. 26 at 10.

Here, the Court agrees with Petitioner in that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal citation omitted); *see also J.R.*, 2025 WL 1810210, at *4 (discussing that a "TRO would impose little to no prejudice on the Government, which is free at any time to execute the removal order by" lawfully removing the non-citizen). Indeed, the U.S. Supreme Court has held that "there is a public interest in preventing [non-citizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *See Nken*, 556 U.S at 436. Thus, these factors weigh strongly in favor of issuing a TRO in this case.

## B.   Scope of Relief

"An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect . . . rights against injuries otherwise irremediable.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)). Petitioner seeks a court order restraining Respondents from removing him to a third country without any

meaningful opportunity to assert a fear-based claim for withholding of removal. Dkt. 2 at 7. Petitioner has demonstrated irreparable harm arising from removal to a third country without due process, and as such, the government must provide Petitioner with adequate notice and a meaningful opportunity to raise any fear-based claim under CAT prior to effectuating his removal.

### C. Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). More specifically, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation omitted); *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (discussing that the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond"). Here, a bond would pose a significant hardship on Petitioner, who argues due to his prolonged detention, he is indigent. Dkt. 2 at 24. The Court therefore exercises its discretion and waives the bond requirement under Rule 65(c). *See, e.g.*, *Save Our Sonoran, Inc v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005).

## IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents shall not remove Petitioner to a third country, *i.e.*, a country other than the countries designated as the countries of removal in Petitioner's final order of removal, without written notice to both Petitioner and Petitioner's counsel in a language the Petitioner can understand. Following notice, Petitioner must be given a meaningful opportunity, and **a minimum of ten (10) days** to raise a fear-based claim for protection under the Convention Against Torture prior to removal. If Petitioner demonstrates "reasonable fear" of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings. If Petitioner is not found to have demonstrated a "reasonable fear" of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of **fifteen (15) days**, for Petitioner to seek reopening of his immigration proceedings.

2. This TRO shall take effect on September 11, 2025, and expires on September 25, 2025. The TRO may be extended for good cause or upon Respondents' consent.

3. Respondents are **ORDERED TO SHOW CAUSE** on September 23, 2025, at 1:30 p.m. by Zoom before Judge Serena R. Murillo as to why a preliminary injunction should not issue. *See* L.R. 65-1.

Petitioner may supplement his TRO Application no later than September 17, 2025, and Respondents must file any written response to the Order to Show Cause no later than September 19, 2025. Petitioner may file a reply no later than September 22, 2025. The parties are directed to Judge Murillo's Procedures and Schedules page for the Zoom log-in instructions.

**IT IS SO ORDERED**.

                                                                                                                                                                 -    :    -

Initials of Deputy Clerk    gga

cc: