UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

M.T.M,

                    Petitioner,

          v.

TONYA ANDREWS, et al.,

                    Respondents.

Case No.   2:25-cv-08208-SRM-PD

**ORDER GRANTING PETITIONER'S SECOND MOTION FOR PRELIMINARY INJUNCTION [42]**

Before the Court are Petitioner's Second Motion for Preliminary Injunction, Respondents' Opposition, and Petitioner's Reply. Dkts. 42, 45, 47. Upon review, the Petitioner's Second Motion for Preliminary Injunction is due to be granted. Dkt. 42.

**I.    Background**

On September 24, 2025, the Court entered a preliminary injunction as to Respondents. Dkt. 39. On October 6, 2025, Petitioner filed an Unopposed Motion for Leave to Amend the Petition for Writ of Habeas Corpus and a Second Motion for Preliminary Injunction. Dkts. 41, 42. On October 9, 2025, the Court granted Petitioner's Unopposed Motion for Leave to Amend the Petition for Writ of Habeas. Dkt. 43. On this same date, Petitioner filed an Amended Petition against Respondents. Dkt. 44. On October 20, 2025, Respondents filed an Opposition to Petitioner's Second Motion for

-1-

Preliminary Injunction. Dkt. 45. On October 23, 2025, Respondents filed an Answer to Petitioner's First Amended Petition. Dkt. 46. On October 30, 2025, Petitioner filed a Reply in Support of the Motion for Second Preliminary Injunction. Dkt. 47.

On January 30, 2026, the Court ordered Petitioner to file a status update, to which Petitioner filed and also requested an Order to Show Cause and Order Directing Respondents to File a Declaration Regarding Third-Country Removal. Dkts. 49, 50. In the status update, Petitioner provides the following:

> On October 21, 2025, the Department of Homeland Security (DHS) properly informed M.T.M. and his immigration counsel that it intended to remove M.T.M. to Ghana. On November 14, 2025, M.T.M.'s immigration counsel filed a motion to reopen M.T.M.'s immigration proceedings so that he may have a meaningful opportunity to be heard on his fear-based claims as to Ghana. On December 5, 2025, the IJ exercised its discretion to deny the motion to reopen, declining to adjudicate M.T.M.'s fear-based claims as to Ghana. M.T.M.'s immigration counsel then filed an appeal of the IJ's motion to reopen decision with the Board of Immigration Appeals (BIA). The appeal remains pending. In sum, M.T.M. has still not had a neutral adjudicator hear his fear-based claims as to Ghana—only a DHS asylum officer that conducted a single interview.

Dkt. 50 at 3. And as relevant to Petitioner's Second Motion for Preliminary Injunction, Petitioner contends that "On January 7, 2026, DHS informed M.T.M. and his immigration counsel that it intended to seek removal to third-country Cameroon." *See id.* at 4. According to Petitioner, a week later, "DHS informed M.T.M. and his immigration counsel that it intended to seek removal to third-country Equatorial Guinea." *See id.* In addition, Petitioner asserts that it was unclear whether Respondents were actively pursuing Petitioner's removal to all of the above noticed countries. *See id.* In addition, Petitioner indicated a lack of clarity as to whether Respondents have an operative acceptance of removal and indefinite residence from any of the above three noticed third

countries. *See id.* As a result, Petitioner requested that the Court order Respondents to show cause regarding the noticed third-party country removal of Petitioner. *See id.* at 2.

On February 9, 2026, the Court granted Petitioner's Motion for an Order to Show Cause and Order Directing Respondents to File a Declaration Regarding Third-Country Removal. Dkt. 51. In its Order, the Court directed Respondents to file a declaration addressing the following:

> 1. Which, if any, of the three noticed third countries for removal, *i.e.*, Ghana, Cameroon, and Equatorial Guinea, are currently willing to accept Petitioner's removal from the United States and indefinite residence?
>
> 2. If any of the noticed third countries for removal are currently willing to accept Petitioner's removal from the United States and indefinite residence, is such acceptance conditioned upon Petitioner's removal occurring within a specified time frame?

*Id.* at 3. Instead of answering the Court's questions or filing a declaration, Respondents provide as follows:

> Respondents understand that this information was sought for purposes of deciding the merits of Petitioner's habeas claim that he is now being held in indefinite detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal to a third country is not sufficiently proximate at this juncture. Understanding the relevance this information would have for purposes of rebutting the Petitioner's *Zadvydas* claim, undersigned counsel promptly requested that the agency provide a declaration answering these questions, but unfortunately has not been able to obtain that declaration.

Dkts. 52, 53. On February 20, 2026, Petitioner filed a Reply in Support of the Amended Petition for Writ of Habeas. Dkt. 54. Accordingly, the Court now turns to Petitioner's Second Motion for a Preliminary Injunction. Dkts. 42.

-3-

## II.     Legal Authority

A petitioner must establish four elements for a preliminary injunction to issue: "(1) a likelihood of success on the merits, (2) that the [petitioner] will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *See Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20-22 (2008)). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *See Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). Mainly, this standard ensures that the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "serious questions going to the merits and a hardship balance that tips sharply toward the [petitioner]," and so long as the other *Winter* factors are also met. *Id.* at 1132 (internal quotation marks omitted).

Congress has authorized the Attorney General to detain noncitizens under "Sections 236 and 241 of the Immigration and Nationality Act, codified at 8 U.S.C. §§ 1226 and 1231." *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Section 1231(a) governs the detainment of "noncitizens who have been ordered removed from the United States." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022) (citation omitted). More specifically, Section 1231(a)(6) provides for a "90-day removal period," after which "a noncitizen may be detained or may be released under terms of supervision." *See id.* at 575-76 (internal quotation marks omitted). Upon the expiration of a removal period, certain categories of detainees may continue to be detained by the Government: "(1) those who are inadmissible on certain specified grounds; (2) those who are removable on certain specified grounds; (3) those it determines to be a risk to the community; and (4) those it determines to be unlikely to

comply with the order of removal." *See id.* at 578-79 (quoting 8 U.SC. § 1231(a)(6)) (internal quotation marks omitted).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), noncitizens challenged their prolonged detention under Section 1231(a)(6). *See Zadvydas v. Davis*, 533 U.S. 678, 684-86 (2001). At the heart of the issue in *Zadvydas* were noncitizens—who the Government had ordered removed and who had exhausted administrative and judicial review— whose "removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *See Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86). Ultimately, the Supreme Court held that Section 1231(a)(6) does not authorize indefinite detention, but rather "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *See Zadvydas*, 533 U.S. at 689.

Subsequent Ninth Circuit courts have interpreted this as entitling a noncitizen to release "after a presumptively reasonable 6-month period of post-removal period detention" if the noncitizen can demonstrate the existence of a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Prieto-Romero*, 534 F.3d at 1062 (quoting *Zadvydas*, 533 U.S. at 701) (internal quotation marks omitted); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court."). Upon such a demonstration, the Government must then provide sufficient evidence to rebut the noncitizen's showing. *See Zadvydas*, 533 U.S. at 701. What constitutes a "reasonably foreseeable future" shortens as the period of "prior postremoval" detention lengthens. *See id.*

### III.    Analysis

Underlying Petitioner's claims for a preliminary injunction are two requests: (1) his immediate release from immigration detention pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 2241, the Immigration and Nationality Act, the Administrative Procedure Act, the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and the Suspension Clause of Article I, Section 9, Clause 2 to the U.S. Constitution; and (2) a permanent injunction barring Respondents from violating Petitioner's due process rights and circumventing this Court's jurisdiction by unlawfully removing him to a third country without a meaningful opportunity to be heard on a potential fear-based claim for relief, pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 2241, the Immigration and Nationality Act, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Dkt. 44.

In support of his request for immediate release, Petitioner asserts that he has been in detention and in the custody of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), for more than 19 months despite having succeeded on final withholding relief approximately eight months ago. *Id.* at 9. Petitioner also contends that even if Respondents were to secure a third country's permission for his removal, Petitioner would likely succeed on a fear-based claim barring removal to that third country based on the identical reasons of persecution for his sexual orientation for which his Senegal withholding relief was based. *Id.* at 9-10.

As alleged in the Petition, Petitioner is a Senegalese citizen who fled Senegal in 2016 following assaults and further threats of violence and death based on his being perceived as gay and an LGBTQ advocate. *Id.* at 12, 24. Petitioner entered the United States on February 8, 2024, was placed in DHS custody on this same date and sought asylum. *Id.* at 25-26; 44-1 at 2-24; 44-3 at 6. Thereafter, DHS placed Petitioner at an ICE detention facility in California and on April 17, 2024, DHS served Petitioner with a Notice to Appear charging him as removable pursuant to section 212(a) of the INA. Dkt. 44 at 26; 44-6. Petitioner was then taken to the Golden State Annex in McFarland,

California, where he has remained detained as of his August 25, 2025 Declaration. Dkt. 44 at 26; 44-4; 44-6 at 17-20. On February 11, 2025, an IJ granted Petitioner withholding of removal to Senegal pursuant to section 241(b)(3) of the INA based on the likelihood that he would be tortured or persecuted if deported because of his protected status related to sexual orientation. Dkt. 44 at 26; 44-4 at 12-15. Petitioner's withholding of removal order became final on February 11, 2025, as DHS and Petitioner waived the right to appeal. Dkt. 44 at 26; 44-4 at 15. Because the "removal period begins" on the "date the order of removal becomes administratively final," Petitioner's removal period began on February 11, 2025 when he waived appeal of the IJ's removal order. *See* 8 U.S.C. § 1231(a)(1)(B)(i); 8 C.F.R. § 124.1.

On August 27, 2025, ICE informed Petitioner he would be imminently removed to Ghana, which was attempted and precipitated the initial preliminary injunction entered by this Court on September 24, 2025. Dkts. 39, 44 at 28-30; 46-1. While Respondents assert in their Opposition of October 20, 2025 and Answer of October 23, 2025, respectively, that the Government "has been actively pursuing," and "is attempting to remove" Petitioner to a third country, their Response of February 18, 2026 reflects an inability to obtain a declaration regarding the willingness of the noticed third countries to accept Petitioner's removal and any specified time frame for removal. Dkt. 53 at 2. Indeed, that Petitioner has not received such third country removal notice belies Respondents' claims in the Opposition and Answer. *See* Dkts. 45 at 2; 46 at 3; 46-2; 53 at 2. Thus, Respondents have provided neither formal written notice nor sufficient evidence of a significant likelihood of Petitioner's removal to a third country in the reasonably foreseeable future. *See* Dkts. 45-1, 46, 53.

Here, Petitioner has demonstrated there is no significant likelihood of removal in the reasonably foreseeable future, and the Government has failed to provide evidence sufficient to rebut Petitioner's showing. *See, e.g.*, Dkts. 42, 44-47, 53, 54. Consequently, Petitioner has established he is likely to succeed on the merits, or at the least the existence of serious questions going to the merits so that the balance tips sharply toward

Petitioner. *See, e.g., Winter*, 555 U.S. at 20; *Cottrell*, 632 F.3d at 1132. In addition, Petitioner's documentation supports that that he is likely to suffer irreparable harm in the absence of preliminary relief considering his serious medical conditions. *See* Dkt. 42 at 27; 44-4 at 33, 42-44. Nonetheless, "[i]t is well established that the deprivation of constitutional rights unquestionably constitute irreparable injury." *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted).

Next, the balance of equities and public interest factors tip in Petitioner's favor, in that "it is always in the public interest to prevent the violation of a party's constitutional rights." *See id.* (internal quotation marks and citations omitted); *see also Nken v. Holder*, 556 U.S. 418, 436 (2009) ("Of course there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm."); *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (discussing that these two factors merge when the government is the opposing party). Accordingly, Petitioner has made a sufficient showing under each of the *Winter* factors and his Second Motion for Preliminary Injunction is due to be granted.

Significantly, the "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). Upon review, Petitioner's continued detention violates the United States Constitution and the applicable statutes and Petitioner is due to be immediately released. The Court, having considered Petitioner's Second Motion for a Preliminary Injunction, Dkt. 42, and the underlying Amended Petition, Dkt. 44, in addition to the above, **ORDERS** as follows:

1. The Court **GRANTS** Petitioner's Second Motion for Preliminary Injunction, Dkt. 42;

2. Respondents their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Petitioner from immigration custody;

3. The Court **ENJOINS** Respondents from re-detaining Petitioner unless and until they fully comply with the Court's prior preliminary injunction Order, Dkt. 39, prior to re-detaining Petitioner for the purpose of imminently effectuating his removal order;

4. The Court dismisses Petitioner's First Amended Petition for Writ of Habeas Corpus, Dkt. 44, as **MOOT**;

5. Respondents their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to return all of Petitioner's belongings, including his identification documents; and

6. Respondents their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to submit a declaration from a person with personal knowledge that confirms Petitioner has been released from immigration custody on or before **March 18, 2026, at 5 p.m.**

**IT IS SO ORDERED.**

Dated: March 17, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE

-9-